UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELBY RODRIGUEZ,

                                       **Plaintiff**,

                              v.                                    6:13-CV-915
                                                                   (FJS)

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

                                       **Defendant.**
_____

**APPEARANCES**                                     **OF COUNSEL**

**BINDER & BINDER**                        **CHARLES E. BINDER, ESQ.**
60 East 42nd Street
Suite 520
New York, New York 10165
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **JASON P. PECK, ESQ.**
**OFFICE OF REGIONAL**
**GENERAL COUNSEL – REGION II**
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Elby Rodriguez brought this action pursuant to the Social Security Act, 42

U.S.C. §§ 405(g) and 1383(c)(3) ("Act"), seeking judicial review of a final decision of the

Commissioner of Social Security (the "Commissioner"), denying his application for benefits. *See generally* Dkt. Nos. 1, 13. Currently before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 13, 14.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff filed an application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") on December 18, 2009, alleging disability beginning on January 31, 2008. *See* Administrative Record ("AR") at 187-192. The Commissioner denied Plaintiff's application on May 5, 2010. *See id.* at 91-106. Plaintiff timely filed a written request for a hearing, *see id.* at 107-08, which was held on August 5, 2011 in Syracuse, New York before Administrative Law Judge Bruce S. Fein ("ALJ"). *See id.* at 64-88. Plaintiff was represented by counsel at the hearing. *See id.* at 64.

On October 21, 2011, the ALJ issued a written decision in which he made the following findings "[a]fter careful consideration of the entire record . . . ."

1) Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2013."
2) Plaintiff had not "engaged in substantial gainful activity since January 31, 2008, the alleged onset date."
3) Plaintiff "has had the following severe impairments: major depressive disorder and substance addiction disorder, in remission."
4) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."
5) "After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional parameters: he is able to understand and remember very short and simple instructions; he is able to carry out very short and simple instructions; he can occasionally carry out complex tasks, with supervision; he can have occasional contact with coworkers, supervisors and the public; and he can be in a low-stress

environment. Low-stress is defined as dealing primarily with objects, rather than with data or people. It is further defined as being able to adapt to routine changes in the workplace."
6) Plaintiff "is unable to perform any past relevant work."
7) Plaintiff "was born on August 20, 1963 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date."
8) Plaintiff "has at least a high school education and is able to communicate in English."
9) "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [he] has transferable job skills."
10) "Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."
11) Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 31, 2008, through the date of this decision."

*See* AR at 50-58 (citations omitted).

The ALJ's decision became the Commissioner's final decision on April 2, 2013, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review. *See* AR at 6-10. The Appeals Council thereafter extended Plaintiff's time to file a civil action. *See id.* at 2. It also reviewed new evidence which Plaintiff submitted, concluding that the new evidence did not warrant remanding Plaintiff's case. *See id.* at 1.

Plaintiff commenced this action on August 2, 2013, and filed a supporting brief on March 20, 2014. *See* Dkt Nos. 1, 13. Defendant filed a response brief on May 1, 2014. *See* Dkt. No. 14.

In support of his motion, Plaintiff advances four arguments. First, Plaintiff argues that the ALJ failed to properly weigh his physicians' opinions. Second, Plaintiff argues that the ALJ improperly assessed his credibility. Third, Plaintiff argues that the ALJ erred by relying on the Medical-Vocational guidelines at step five of the disability analysis. Finally, Plaintiff urges the Court to remand on the basis of new evidence that he argues is material to the determination of disability. *See generally* Dkt. No. 13, Pl.'s Br.

# III. DISCUSSION

## A. Standard of review

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). To be eligible for benefits, a claimant must show that he suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in SGA. *See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id*.
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do his past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, he is not disabled. *See* 20 C.F.R. § 416.920(f).
>
> 5) If the claimant cannot perform his past relevant work, the ALJ determines if he can perform other work, in light of his RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then he is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is

only entitled to receive benefits if he cannot perform any
alternative gainful activity. *See id*.

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step, if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation omitted).

Between steps three and four of the disability analysis, the ALJ must determine the claimant's residual functioning capacity ("RFC"), which is defined as "the most you can still do [in a work setting] despite your limitations." See 20 C.F.R. § 416,945(a)(1); *see also* 20 C.F.R. § 416.920(e). The RFC analysis considers "all of your medically determinable impairments of which we are aware," even if they are not severe. *See* 20 C.F.R. § 416.945(a)(2). The ALJ is to consider "all of the relevant medical and other evidence" in assessing RFC. *See* 20 C.F.R. § 416.945(a)(3).

B.  **ALJ's weighing of medical source opinions**

The Commissioner's regulations instruct that

[g]enerally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2) (emphasis added). Thus, treating physician opinions are "'not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . .'" *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)). "The report of a consultative physician may constitute such substantial evidence." *Id.*

(quoting *Mongeur*, 722 F.2d at 1039). Additionally, an ALJ may properly afford less than controlling weight to a treating physician's medical source statement where the "medical source statement conflict[s] with his own treatment notes[.]" *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013).

When affording a treating physician's opinion less than controlling weight, the ALJ "'will always give good reasons'" for doing so. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). To that end,

> [t]he factors that must be considered when the treating physician's opinion is not given controlling weight include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."

*Brickhouse v. Astrue*, 331 F. App'x 875, 877 (2d Cir. 2009) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)); *see also* 20 C.F.R. § 404.1527(c)(1)-(6).

In this case, Plaintiff argues that the ALJ erred by affording little weight to the opinions of Dr. Dron, his treating psychiatrist, while affording great weight to the opinion of consultative psychologist, Dr. Bornstein. In particular, the ALJ concluded that a lack of consistency between Dr. Dron's opinions and his treatment notes warranted affording his opinions little weight. *See* AR at 56.

The ALJ discussed Dr. Dron's opinions and his treatment notes at length throughout his written decision in arriving at that conclusion. Notably, the ALJ discussed three visits during 2010 in which Plaintiff essentially lacked symptoms that would tend to suggest any significant limitations in his ability to function. *See id.* at 51. For example, in January 2010, Dr. Dron noted that Plaintiff exhibited "no serious mental status abnormalities. He exhibits neither depression nor mood elevation." *See id.* (quoting AR at 435). The next month, Dr. Dron again

noted that "[m]ood is euthymic with no signs of depression or elevation." *See id.* at 435. The ALJ further noted that, in December of 2010, Plaintiff denied all psychiatric problems. *See id.* at 51 (quoting AR at 439). Each of these visits noted no signs of psychotic process.

The ALJ further discussed Dr. Dron's treatment notes in depth with respect to Plaintiff's allegations of anxiety, mood swings, and lack of concentration, pointing out ways in which Dr. Dron's observations from treatment contradicted his opinion concerning the extent of Plaintiff's functional limitations. *See* AR at 55. Accordingly, the Court finds that the ALJ gave sufficient reasoning to support his decision to afford Dr. Dron's opinions little weight. *See Cichocki*, 534 F. App'x at 75.

With respect to Dr. Bornstein's opinion, the ALJ noted that her opinion was consistent with both her own clinical findings regarding Plaintiff's affect and mood together with Dr. Dron's treatment observation of no serious mental status abnormalities. *See* AR at 55-56 (citing AR at 336-39). The ALJ further reasoned that Dr. Bornstein's opinion was consistent with Plaintiff's hearing testimony regarding his activities of daily living and interactions with others. *See id.* at 56. For these reasons, the Court finds that the ALJ applied the correct legal standard and offered sufficient reasons to support his weighing of the medical opinions. *See Petrie*, 412 F. App'x at 405; *Cichocki*, 534 F. App'x at 75. Accordingly, the Court declines to disturb the Commissioner's weighing of the conflicting evidence in this case. *Cf. Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

## C. ALJ's credibility assessment

When a claimant makes subjective allegations of symptoms limiting his ability to function, the regulations provide that

> [y]our symptoms, such as pain . . . will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present . . . which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.

20 C.F.R. § 416.929(b); *see also* 20 C.F.R. § 404.1529(b). Accordingly, the Social Security Administration has adopted a two-step standard for assessing a claimant's credibility. *See* Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, *2 (July 2, 1996); *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010).

> First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce" the pain alleged. 20 C.F.R. § 404.1529©(1); see SSR 96-7P. Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry. 20 C.F.R. § 404.1529©(3)(i)-(vii); *Taylor v. Barnhart*, 83 Fed. Appx. 347, 350-51 (2d Cir. 2003) (summary order).

*Meadors*, 370 F. App'x at 183 (footnote omitted). The Commissioner has instructed that such a credibility inquiry considers the following factors:

> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3.

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. *See* AR at 54. He then found that

Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. *See id.* The ALJ supported this finding in the following ways. First, the ALJ pointed to portions of Dr. Dron's treatment notes that contradicted Plaintiff's allegations regarding his anxiety, mood, swings, lack of concentration, and the side effects of his medications. *See id.* at 55. Additionally, with respect to Plaintiff's allegations regarding his lack of energy, the ALJ noted Plaintiff's activities of daily living, including volunteering, reading, listening to the radio, watching television, preparing simple meals, cleaning, caring for his personal needs, and attending Alcoholics Anonymous meetings. *See id.* at 55. Contrary to Plaintiff's assertion, the ALJ did not commit reversible error by declining to expressly address all of the relevant factors in his written decision. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (instructing that "'[a]n ALJ does not have to state on the record every reason justifying a decision'" (quoting *Brault,* 683 F.3d at 448). Accordingly, the Court finds that the ALJ sufficiently analyzed Plaintiff's subjective allegations to the extent that they were not substantiated by objective medical evidence. *See Meadors*, 370 F. App'x at 183.

**D. ALJ's reliance on Medical-Vocational Guidelines**

Ordinarily, the Commissioner meets her burden at step five of the disability analysis by resorting to the applicable Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the grids"). *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). However, "application of the grid guidelines and the necessity for expert testimony must be determined on a case-by-case basis." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986). In particular, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional

limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments . . . ."[1] *Id.* (quoting *Blacknail*, 721 F.2d at 1181).

Accordingly, "[t]he grid regulations may not be relied upon as the exclusive determinant of disability status if a claimant also suffers from a *significant* non-exertional limitation." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 439 (S.D.N.Y. 2010) (citation omitted) (emphasis added). A significant nonexertional limitation is one that results in "'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Baldwin v. Astrue*, No. 07 Civ. 6958(RJH)(MHD), 2009 WL 4931363, *27 (S.D.N.Y. Dec. 21, 2009) (quoting *Bapp*, 802 F.2d at 606).

Along these lines, the regulations provide that where a claimant's limitations "only affect [his] ability to perform the nonexertional aspects of work-related activities, the [grids] do not direct factual conclusions of disabled or not disabled." *See* 20 C.F.R. § 404.1569a(c)(2); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(1). Thus, "[i]n the evaluation of a disability where the individual has solely a nonexertional type of impairment, determination as to whether disability exists shall be based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in [the grids]." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(1).

---

[1] An exertional limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (*i.e.,* sitting, standing, walking, lifting, carrying, pushing, and pulling). *See* 20 C.F.R. § 404.1569a(b). "A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands," such as difficulty maintaining attention or concentrating. *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y.1997) (citing 20 C.F.R. § 404.1569a(a), (c)).

In this case, Plaintiff argues that the ALJ erred in relying on the grids at step five of the disability analysis after finding that he had moderate difficulties in concentration, persistence or pace at step two of the disability analysis. Plaintiff further argues that the ALJ's RFC findings, including limitation to very short and simple instructions, occasional complex tasks with supervision, no more than occasional contact with others, and limitation to low-stress work, amounted to significant nonexertional limitations that precluded the ALJ from relying solely on the grids in finding him not to be disabled. *See* Dkt. No. 13, Pl.'s Br., at 20.

The ALJ's step-five analysis acknowledged that Plaintiff's ability work was "compromised by nonexertional limitations." *See* AR at 58. However, the ALJ further concluded that "these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." *See id.* As noted, the ALJ found that Plaintiff suffers from "moderate difficulties" with respect to concentration, persistence or pace. *See id.* at 52. However, he did so at step two of the disability analysis. *See id.* As the ALJ correctly noted, the criteria under which he made such finding related to the severity of Plaintiff's impairments at step two, not Plaintiff's RFC. *See id.* By contrast, the cases Plaintiff cites on this point are distinguishable because, in those cases, the ALJ erred by relying on the grids at step five after finding significant nonexertional limitations in the RFC analysis. *See, e.g.*, *Correale-Englehart*, 687 F. Supp. 2d at 442.

The remainder of the ALJ's RFC findings roughly track the Commissioner's guidance regarding the requirements of unskilled work. The Commissioner's guidance provides that, as here,

> [w]here a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental

> demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A *substantial loss* of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

SSR 85-15, 1985 WL 56857, *4 (Jan. 1, 1985) (emphasis added). In this case, as noted, the ALJ found that Plaintiff was limited to very short and simple instructions, occasional complex tasks with supervision, no more than occasional contact with others, and limitation to low-stress work. *See* AR at 54. The ALJ defined low-stress as dealing primarily with objects, rather than with data or people, and including the ability to adapt to routine changes in the workplace. *See id.* This comports with the Commissioner's guidance on this point. *See* SSR 85-15, at *4 (providing that unskilled jobs at all levels of exertion "ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis").

For these reasons, the Court finds that the ALJ did not err in finding that Plaintiff's nonexertional limitations had little to no effect on the occupational base, *see* SSR 85-15, 1985 WL 5687, at *4, and further that his step-5 analysis was "based on the principles in the appropriate sections of the regulations, giving consideration to the rules for specific case situations in [the grids]." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(1).

**E. New evidence**

"When the Appeals Council denies review after considering new evidence, we simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). In this case, Plaintiff offered the assessment of Nurse Practitioner Joyce Behling. The Appeals Council considered her opinion and rejected it. *See* AR at 1. NP Behling opined that Plaintiff was markedly limited with respect to the ability to maintain attention and concentration for extended period, the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and the ability to accept instructions and respond appropriate to criticism from supervisors. *See id.* at 33-36. However, to the extent that Plaintiff points to evidence in the Administrative Record, including NP Behling's opinion, that reasonably might support a different conclusion in his favor, "whether there is substantial evidence supporting the appellant's view is not the question" on appeal. *Bonet*, 523 F. App'x at 59.

In summary, for the foregoing reasons, the Court finds that the ALJ applied the appropriate legal standards and further that there is substantial evidence supporting his findings with respect to the severity of Plaintiff's impairments and his RFC. *See Richardson*, 402 U.S. at 401.

### IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No 13, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 14, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: April 5, 2016
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge